## Stanley v. Commonwealth.

Jan. 18, 1944.

Dennis B. Wooton and Paul Gross for appellant.

Hubert Meredith, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Willie Stanley, Audrey Davis, Jeff Bryant, and Charlie Smith were charged with the crime of robbing Bert Combs at Four Seam, in Perry County, about 9:30 p. m., Sunday, February 21, 1943. Upon his separate trial Stanley was found guilty and his punishment fixed at two years in the reformatory. The principal grounds urged for reversal are: (1) There should have been a peremptory instruction in favor of the accused; and (2) there was misconduct on the part of two jurors.

Bert Combs arrived at Four Seam shortly before 9:30 o'clock on the night of the robbery, in company with Janice Cody, whom he was taking home from a picture show. Combs was driving a Chevrolet pick-up truck. As he started to turn around he noticed a car following him, and he pulled over to the side of the road and turned off the lights of his truck. The car stopped with its lights burning. Lights were on in two or more nearby houses. Within a few minutes Audrey Davis left the car and came over to Combs' truck and told him to get out, he wanted to see him. Combs got out and took a few steps toward Davis. Davis advanced toward him and hit him in the face with his hand. A scuffle followed, during which Davis backed Combs up against a wire fence.

The evidence for the Commonwealth from this point is: Willie Stanley, who was driving the car which was parked some 20 or 25 feet from the truck, came upon the scene; he placed one hand over Combs' mouth and started choking him with the other; while the three parties were scuffling, either Davis or Stanley unbuttoned

Combs' hip pocket and removed his pocketbook which contained a ten dollar bill, four small, new type, five dollar bills, and one old type, large, five dollar bill; Jeff Bryant, who was also in the car, then came upon the scene and told Combs to clear out, as did Stanley and Davis; then Combs left and notified a deputy sheriff that he had been robbed; later in the evening Stanley and Davis were arrested in a restaurant in Hazard; Davis, who had borrowed a dollar from Bryant during the afternoon, had some $27 in his possession, including a ten dollar bill; four pocketbooks were found on Stanley; in all he had some $37 in cash, made up in part of four small type five dollar bills and one large type five dollar bill; and the large type five dollar bill was the one which was taken from Combs.

Stanley's version of the affray was: When he saw Combs and Davis scuffling he approached them and said, "Here, quit that, that is enough," and took Davis by the shoulder and pulled him away from Combs; he then told Combs to get back in his truck and to leave; he did not place his hands on Combs, or take any money from him; and he had a large type five dollar bill in his possession when he was arrested, for which he had given Davis five one dollar bills in exchange about 9 p. m.

Jeff Bryant, who testified for Stanley, said he did not see Stanley engaged in the affray, but rather he seemed to be trying to keep down trouble. He said also he loaned Davis a dollar about 2 o'clock in the afternoon, and was with him up until the time of the affray and that he did not see him get money from anyone else. Stanley offered proof in support of that of his own to the effect that he got the large type five dollar bill from Davis.

It was for the jury to determine the credibility of the witnesses. Williams v. Commonwealth, 287 Ky. 253, 152 S. W. (2d) 967. It is obvious from the foregoing that there was ample evidence to support its finding of guilt against Stanley.

While the jury was considering the case the trial judge was asked to come to the jury room. He took with him Stanley, his attorney and the Commonwealth's attorney. One of the jurors asked the judge if Davis would be tried at that term of court. The judge said all he could say was that he had been indicted for the same crime. Stanley's attorney insisted the judge should

410

have told the jury that Davis' case was set down for trial at that term, and would be tried unless continued. We fail to see how this happening could have been prejudicial to Stanley's substantial rights in any manner; nor is any reason advanced as to how it might have been.

On the morning of the trial a juror met Jeff Bryant on the street and asked him what he was doing in town. Bryant said he told the juror he guessed he would be used as a witness for the Commonwealth, and then he and the juror discussed the case at length. He said further he did not know at the time that this person was a regular juror. The counter affidavit of the juror set forth that he did meet Bryant and spoke to him about the case, but denied the case was discussed at length, or that its merits were discussed. He stated further that nothing said about the case caused him to form or express an opinion, and that when he qualified as a juror he had not formed or expressed an opinion as to Stanley's guilt. Bryant's affidavit makes no pretense of saying what phases of the case were discussed. Furthermore, Bryant testified as a witness for Stanley, and his testimony was favorable to him. It is only reasonable to assume that anything which he may have said to the juror would have been favorable to Stanley, rather than detrimental to him. We believe this contention to be groundless also.

Since we find no error prejudicial to appellant's substantial rights, we think the judgment should be and it is affirmed.